# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT G. KELLY and JOHN T. DeWALD,<br><br>Plaintiffs,<br><br>v.<br><br>STARR INDEMNITY & LIABILITY COMPANY,<br><br>Defendant. | CASE NO. 15cv2900 JM(RBB)<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

Pursuant to Fed.R.Civ.P. 56, Plaintiffs Scott G. Kelly and John T. DeWald (collectively "Plaintiffs") move for partial summary judgment on their breach of the duty to defend claim. Defendant Starr Indemnity & Liability Company ("Starr") separately moves for summary judgment on all claims or, alternatively, for partial summary judgment. All motions are opposed. Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for resolution without oral argument. For the reasons set forth below, the court grants Starr's motion for summary judgment and denies Plaintiffs' motion for partial summary judgment. The Clerk of Court is instructed to enter judgment in favor of Starr and against Plaintiffs, and to close the file.

## BACKGROUND

On December 23, 2015, Starr removed this diversity action from the Superior

Court, County of San Diego. The Complaint alleged two claims against Starr for breach of contract and breach of the duty of good faith and fair dealing. The third cause of action for negligence is asserted only against "DOE AGENTS/BROKERS."[1]

Plaintiffs are managing members of John DeWald and Associates, LLC ("JDA"), a real estate development company. JDA has had only two members, Kelly and DeWald, and has had only one employee for a short period of time in 2008 or 2009. DeWald would largely manage the entitlements, permitting, construction and other aspects of real estate development projects. While both Plaintiffs would work to obtain financing for the development projects, Kelly would primarily prepare the prospectus, or pro forma documents, regarding potential returns on investments. DeWald would use his experience in construction to carry out his responsibilities with regard to design and construction. Typically, for each project, Plaintiffs would form a limited liability corporation ("LLC"), generally with the project's name, with JDA serving as the project manager. JDA was generally responsible for designing, constructing, marketing, and obtaining financing through investors and banks. Private loans were usually obtained in exchange for a promissory note with the development LLC, which provided the lender with interest on the loans.

<u>The 2010 Brehnan Demand</u>

Brehnan was one of the investors in several JDA development projects. On August 12, 2010, Brehnan emailed Plaintiffs and identified two delinquent promissory notes and two notes coming due within several weeks (the "Promissory Notes").[2] Brehnan also informed Plaintiffs that "I would like to try not to proceed with legal remedy . . . as being recommended by my legal team." The loans were restructured in August 2012, and ultimately resolved through settlement in a state court action between Brehnan and Plaintiffs. The settlement consisted of Plaintiffs paying a discount on the

---

[1] Doe defendants are not considered for federal pleading purposes. See <u>Navarro Sav. & Loan Ass'n v. Lee</u>, 446 U.S. 458, 460-61 (1980).

[2] The balance owed on the Promissory Notes exceeded $400,000.

outstanding balance of the Promissory Notes.

## The Application and Policy for Insurance

In May 2011, Plaintiffs executed the Application for Insurance ("Application") for a directors and officers liability policy. The Application asked the insureds to confirm that:

> (a) No person or entities for whom this insurance is being applied have any knowledge of any fact, circumstance, situation, or information of any error, misstatement, act, mission, neglect, breach of duty or other matter that may give rise to a Claim which may fall within the scope of coverage of the proposed insurance.
>
> (b) No person(s) or entity(ies) proposed for whom this insurance is being applied for has knowledge of any inquiry, investigation or communication that he/she/it has reason to believe might give rise to a Claim that might fall within the scope of coverage of the proposed insurance.

(Starr Exh D, Barrett Decl., Exh. 14, ST01710). The insureds responded "no" to both questions. The Application does not define the term "claim." The Application also provided:

> IT IS AGREED THAT IF SUCH KNOWLEDGE OR INFORMATION EXISTS WITH REGARD TO QUESTIONS 9 a), b), c), REGARDLESS OF WHETHER IT IS DISCLOSED IN THIS APPLICATION, ANY CLAIM BASED UPON, ARISING FROM, OR IN ANY WAY RELATING TO SUCH ERROR, MISSTATEMENT, MISLEADING STATEMENT, ACT, OMISSION, NEGLECT, BREACH OF DUTY, OR OTHER MATTER OF WHICH THERE IS KNOWLEDGE OR INFORMATION SHALL BE EXCLUDED FROM COVERAGE UNDER THE INSURANCE BEING APPLIED FOR AND THE INSURER SHALL NOT BE LIABLE FOR SUCH LOSS AND, TO THE EXTENT THIS POLICY PROVIDES DUTY TO DEFEND COVERAGE, THE INSURER SHALL HAVE NO DUTY TO DEFEND.

(Starr Exh D, Barrett Decl., Exh. 14, ST01711).

Effective May 11, 2011, for the period from May 11, 2011 to May 11, 2012, Starr issued its Resolute Portfolio For Private Companies, including a Directors & Officers Liability Coverage section (the "Policy"). The Policy's limit of liability was $1,000,000, and only provided directors and officers liability coverage. The Policy expressly referred to and incorporated the Application and, among other terms and conditions, provided: "The Insurer has the right and duty to defend any Claim against any Insured covered under this policy, even if such Claim is false, fraudulent or

groundless . . . ."

The Tender

On November 17, 2011, Plaintiffs, through counsel, notified Starr of a November 2, 2011 demand letter received from Brehnan. The demand letter identified Plaintiffs' default under the terms of the four Promissory Notes. The demand letter also identified several misrepresentations made by Plaintiffs concerning anticipated payments on the Promissory Notes and informed Plaintiffs, "Your clients's actions give rise to several civil causes of action that Dr. Brehnan may bring against [Plaintiffs], including breach of contract, breach of fiduciary duties, fraud, and securities fraud."[3]

On January 30, 2012, Starr agreed to provide a defense for the Brehnan claims under a reservation of rights while it performed an investigation. On April 17, 2012, Starr was provided with a copy of a draft complaint that Brehnan threatened to file. In a free-flowing, exaggerated, conclusory style of pleading, the proposed complaint alleged 30 causes of action including five breach of contract claims (four are related to the unpaid Promissory Notes), five breach of the covenant of good faith claims, breach of fiduciary duty, fraud, promissory fraud, securities fraud, conversion, negligence, negligent misrepresentation, money due on default, constructive trust, rescission, declaratory relief, two claims for quiet title, accounting, fraud by concealment, unfair business practices, injunctive relief, money had and received, and two counts for violations of RICO.

On May 3, 2012, Starr denied coverage in a lengthy analysis letter. Among other things, coverage was denied on grounds that the failure to disclose the claim on the Application defeats coverage, coverage is barred by the prior knowledge exclusion, the claim was first made before the Policy incepted, and the claim is barred by the professional services exclusion.

On August 9, 2012, in the Superior Court of California, County of San Diego,

---

[3] Plaintiffs represent that JDA suffered from the general economic downturn in 2008 and 2009. One consequence of the economic downturn resulted in the reduced ability of the real estate development industry to obtain financing. (PUF 32-34).

Brehnan filed a complaint against Plaintiffs, JDA, and several entities related to Plaintiffs. The complaint alleged 18 claims for breach of contract, breach of fiduciary duty, promissory fraud, negligent misrepresentation, intentional misrepresentation, securities fraud, negligence, conversion, money due on default, constructive trust, rescission, declaratory relief, money had and received, and accounting. Plaintiffs re-tendered this complaint to Starr. On or about December 7, 2012, Starr provided an additional analysis and again denied coverage. Ultimately, in December 2013, Plaintiffs and Brehnan settled their dispute based upon a discount to the outstanding balance on the Promissory Notes.

Procedural History

On November 20, 2015, Plaintiffs commenced this action in the Superior Court of California, County of San Diego. On December 23, 2015, Starr removed the action to this court, alleging diversity subject matter jurisdiction. The parties have completed discovery and trial is scheduled to commence on October 16, 2017.

## DISCUSSION

**Legal Standards**

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th Cir. 2005). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials <u>negating</u> the opponent's claim." Id. (emphasis in original). The opposing party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for

trial.'" Id. at 324 (citation omitted). The opposing party also may not rely solely on conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

The court must examine the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Any doubt as to the existence of any issue of material fact requires denial of the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). On a motion for summary judgment, when "'the moving party bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.'" Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis in original) (quoting International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992)).

**The Cross Motions**

The issues raised by the parties are fairly joined. Plaintiffs seek summary adjudication on Starr's duty to defend. Starr submits that the court does not reach Plaintiffs' summary adjudication issue because (1) Plaintiffs failed to disclose the Brehnan demand for payment ($418,000) in the Application; (2) the Brehnan demand was a claim first made before the inception of the policy period; and (3) the Professional Services Exclusion precludes coverage for Plaintiffs' claims because the Brehnan action sought recovery of a business debt, a business related and non-covered claim under the policy.

        Disclosure of the 2010 Brehnan Demand

Starr argues that it properly denied coverage because Plaintiffs failed to disclose the 2010 Brehnan demand for payment in JDA's May 2011 Application. The Application asked Plaintiffs to confirm the following:

> (a) No person or entities for whom this insurance is being applied have any knowledge of any fact, circumstance, situation, or information of any error, misstatement, act, mission, neglect, breach of duty or other matter that may give rise to a Claim which may fall within the scope of coverage of the proposed insurance.

>     (b) No person(s) or entity(ies) proposed for whom this insurance is being applied for has knowledge of any inquiry, investigation or communication that he/she/it has reason to believe might give rise to a Claim that might fall within the scope of coverage of the proposed insurance.

(Starr Exh D, Barrett Decl., Exh. 14, ST01710). JDA responded "no" to both questions. The Application also provided:

> IT IS AGREED THAT IF SUCH KNOWLEDGE OR INFORMATION EXISTS WITH REGARD TO QUESTIONS 9 a), b), c), REGARDLESS OF WHETHER IT IS DISCLOSED IN THIS APPLICATION, ANY CLAIM BASED UPON, ARISING FROM, OR IN ANY WAY RELATING TO SUCH ERROR, MISSTATEMENT, MISLEADING STATEMENT, ACT, OMISSION, NEGLECT, BREACH OF DUTY, OR OTHER MATTER OF WHICH THERE IS KNOWLEDGE OR INFORMATION SHALL BE EXCLUDED FROM COVERAGE UNDER THE INSURANCE BEING APPLIED FOR AND THE INSURER SHALL NOT BE LIABLE FOR SUCH LOSS AND, TO THE EXTENT THIS POLICY PROVIDES DUTY TO DEFEND COVERAGE, THE INSURER SHALL HAVE NO DUTY TO DEFEND.

(Starr Exh D, Barrett Decl., Exh. 14, ST01711).

The Application does not define the term "claim." "In construing the language of an insurance policy, a court should give the words used their plain and ordinary meaning, unless the policy clearly indicates to the contrary . . . . When the language is clear, a court should not give it a strained construction to impose on the insurer a liability it has not assumed ...." Giddings v. Industrial Indemnity Co., 112 Cal.App.3d 213, 218 (1980). A claim need not be actual, only potential. While the definition of "claim" varies with context, the ordinary definition of "claim" is "the assertion of a liability of the party, demanding that the party perform some service or pay some money." Abifadel v. Cigna Ins. Co., 8 Cal.App. 4th 145, 160 (1992) (ordinary definition of "claim" applied to a claims made insurance policy where that term was not defined in the policy).

In Abifadel, the Court of Appeal addressed and defined the term "claim," in context of a claims made policy:

> In defining "claims," the law focuses on the claimant's formal demands for service or payment and does not recognize a request for an explanation, the expression of dissatisfaction or disappointment, mere complaining, or the lodging of a grievance as a claim. In both its ordinary meaning and in the interpretation given to it by other courts in similar circumstances, a claim is a demand for something as a right or as due. A

formal lawsuit is not required before a claim is found to have been made. Id. In short, "a claim is a demand for something as a right or as due." Id.

Starr asserts that Brehnan made a claim against Plaintiffs when, on August 12, 2010, JDA received an email from him stating that two promissory notes were delinquent, with an outstanding balance of $107,250, and two notes were due in September 2010, with a balance due of $316,106. (Kelly Exh. 4). The email concluded, "I expect all of these Notes to be paid off at beginning of September 2010. . . . . I would like to try not to proceed with legal remedy . . . as being recommended by my legal team." Id. Kelly testified that at the time of the email Brehnan was threatening legal action if the Promissory Notes were not paid, and that this was the first time Brehnan had threatened legal action. (Kelly Depo. pp.180-187).

On this undisputed record, the court concludes that Plaintiffs had knowledge that Brehnan had asserted JDA's liability for the non-payment of the Promissory Notes. Contrary to the representations in the Application that Plaintiffs were unaware of any fact or circumstance that might lead to a claim, the Brehnan 2010 demand provided Plaintiffs with notice of a claim, whether actual or potential, arising from the Promissory Notes that could give rise to liability. Furthermore, had Starr known of the risks associated with the Promissory Notes, it would not have issued the Policy. (Barret Decl. ¶2). Accordingly, claims arising out of or related to the Promissory Notes fall outside the policy's coverage scope.

Plaintiffs contend that the August 10, 2010 Brehnan demand letter is not a claim. Rather, the Brehnan demand letter should be analogized to the simple receipt of a bill. The mere receipt of a bill is insufficient, Plaintiffs contend, because "there must be a demand for money on account of some wrongful act." (Oppo. at p.13:22-23). The court rejects this and similar arguments. While the mere receipt of a bill is not a claim, the failure to pay a bill, like a promissory note, ripens into a claim when the bill remains unpaid and, like here, collection efforts are threatened or commenced. The August 10, 2010 Brehnan demand identified delinquent payments on two of the

Promissory Notes, noted that two of the Promissory Notes came due in two weeks, and threatened legal action because of non-payment. Moreover, Plaintiffs knew that all four Promissory went unpaid until Brehnan and JDA determined to restructure the Promissory Notes two years later in August 2012, after the Policy period. The court also rejects Plaintiffs' argument that a claim is valid only if "a demand [is] made on the officer or director for money owed on account of a wrongful act." (Oppo. at p.13:27-28). This proposed definition of "claim," requiring service of a demand on an officer or director, is inconsistent with Abifadel, 8 Cal.App. 4th at 160.

The court also rejects Plaintiffs' contention that the language in the Application is ambiguous. In the Policy, Plaintiffs represented that they were unaware of "any fact, circumstance, situation, or information of any error, misstatement, act, mission, neglect, breach of duty or other matter that may give rise to a Claim which may fall within the scope of coverage of the proposed insurance." (ST01710). This language is sufficiently clear and concise. See Phoenix Ins. Co. v. Sukut Construction Co., 136 Cal.App.3d 673 (1982) (finding phrase, "might be expected to be the basis of a claim or suit" "perfectly clear" and unambiguous). Also unavailing is Plaintiffs' argument that the non-rescindability clause in the Policy somehow results in the waiver of the provisions in the Application. It is well established that rescission is not an exclusive remedy. See Williamson &Vollmer Engineering, Inc. v. Sequoia Ins. Co., 64 Cal.App.3d 261, 276 (1976).

The court turns to examine whether the November 2011 tender encompasses the claims related to or arising from the Promissory Notes.

The Tender

On November 2, 2011, Brehnan's counsel memorialized previous discussions regarding the four delinquent Promissory Notes, identified potential causes of action related to the non-payment of the Promissory Notes, and once again offered to settle all claims against JDA for $750,000, instead of the previous demand for $400,000. The letter stated:

> On July 12, 2011, Dr. Brehnan notified your clients that all four of the outstanding promissory notes totaling more than $400,000, were in default, and he offered to compromise his claims on them for $378,000. That offer was not accepted and has expired.

(JDA Exh. 4). In addition to identifying the unpaid Promissory Notes, the letter set forth several instances where Plaintiffs allegedly misrepresented that payments on the Promissory Notes would be forthcoming as other properties of JDA were sold, and funds received would be applied to the outstanding balance of the Promissory Notes. The letter also identified an alleged February 2011 scheme to defraud Brehnan and other investors in the Oceanside Bluffs project. Id. These latter events predate the Policy period.

On November 17, 2011, JDA notified Starr of Brehnan's demand. On January 30, 2012, Starr agreed to provide a defense under a reservation of rights. (JDA Exh. 5). Plaintiffs received a draft complaint from Brehnan and, on April 13, 2012, forwarded the complaint to Starr. In shotgun fashion, the conclusory draft complaint alleged 30 causes of action arising from the failure to comply with the terms of the Promissory Notes and misrepresentations made in connection with payment on the Promissory Notes. The draft complaint alleged that the Promissory Notes and interest remained unpaid. (JDA Exh.7).

On May 3, 2012, Starr disclaimed coverage, largely based upon the failure to disclose the August 2010 Brehnan demand and, with respect to allegations of mismanagement of Brehnan's investments, based upon the professional services exclusion. (JDA Exh. 8). On August 9, 2012, Brehnan filed a slimmed-down version of the draft complaint in the Superior Court, County of San Diego. (JDA Exh. 12). As with the earlier draft complaint, Brehnan's claims arose from the nonpayment of the Promissory Notes and misrepresentations related to, or arising from, promises for

1  payment or payment terms related to the Promissory Notes.[4]  Plaintiffs re-tendered
2  Brehnan's claim to Starr and, on September 17, 2012, Starr analyzed each claim in the
3  complaint and again denied coverage for essentially the same reasons as earlier stated.
4  (JDA Exh. 13).[5]

Based upon the undisputed factual record submitted by the parties, the court concludes that Plaintiffs' failure to disclose the Brehnan 2010 demand was a claim first made before the inception date of the Policy. As outlined in the November 2, 2011 Brehnan demand letter, the non-payment of the delinquent Promissory Notes led to representations related to payment terms on the Promissory Notes by Plaintiffs and form the basis for Brehnan's alleged claims for "breach of contract, breach of fiduciary duties, fraud, and securities fraud." (Starr Exh. E at p.3). As the claim was one that had to be disclosed per the express terms of the Application, the Brehnan claims tendered for defense to Star predated the inception of the Policy period and are not, therefore, a covered claim. Moreover, by its very nature, "a claims made policy limits coverage to claims made against the insured during the policy period." Homestead Ins. Co. v. American Empire Surplus Lines Ins. Co., 44 Cal.App.4th 1297, 1304 (1996). "To extend coverage to claims made against the insured [before or] after the policy period would contradict the purpose of claims made policies, impair the well documented 'social utility' of these policies, and would add a term to the [claims made]

---

[4] The court notes, for example, that the securities claim is based upon Plaintiffs' misrepresentation that "they would pay Mr. Brehnan for his investments and loans associated with said real estate projects." (JDA Exh.13 ¶142). In other words, the securities claim is based upon the nonpayment of the Promissory Notes, claims arising before the inception of the Policy period, not disclosed in the Application, and excluded as a claim arising before the inception date of the Policy or by the professional services exclusion, to the extent Brehnan alleged mismanagement of his investments.

[5] Ultimately, Plaintiffs and Brehnan settled their dispute for $350,000. (Compl. ¶32). DeWald stated that this amount represented a discount to the outstanding balance on the Promissory Notes. (Starr Exh. D, DeWald Depo at pp.185:17-186:24).

policy for which the parties had not bargained." Id. at 1305-06.[6]

In sum, the court grants Starr's motion for summary judgment on all claims alleged in the complaint because the Brehnan claims arose prior to the policy period.[7]

<u>Plaintiffs' Motion for Summary Judgment</u>

In light of the court's determination that coverage does not extend to the Brehnan claims, there was no duty to defend. Accordingly, the court denies Plaintiffs' motion for partial summary judgment.

In sum, the court grants summary judgment in favor of Starr and against Plaintiffs on all claims asserted in the Complaint. The Clerk of Court is instructed to enter judgment accordingly and to close the file.

**IT IS SO ORDERED.**

DATED: August 10, 2017

_____
Hon. Jeffrey T. Miller
United States District Judge

cc: All parties

---

[6] Plaintiffs acknowledge that the provision of professional services exclusion does not provide coverage for business debts or the provision of activities that constitute "professional services."

[7] Where there is no coverage, and no benefits are due, there can be no breach of the implied covenant of good faith and fair dealing. American Medical Int'l, Inc. v. National Union Fire Ins. Co. Of Pittsburgh, 244 F.3d 715, 723 (9th Cir. 2001).