1
2
3
4
5
6
7
8
9
10
11                 UNITED STATES DISTRICT COURT
12                SOUTHERN DISTRICT OF CALIFORNIA
13

14 | SCOTT G. KELLY and JOHN T. | Case No.:  15cv2900 JM (RBB)
15 | DEWALD, |
16 |                         Plaintiffs, | **ORDER DENYING PLAINTIFFS'**
17 | v. | **AND DEFENDANT'S CROSS**
18 | STARR INDEMNITY & LIABILITY | **MOTIONS FOR SUMMARY**
   | COMPANY, | **JUDGMENT**
19 |                         Defendant. |
20
21

22          Defendant Starr Indemnity & Liability Company ("Starr") moves for summary

23    judgment or partial summary judgment on Scott Kelly's and John DeWald's ("Plaintiffs")

24    claims for breach of contract and breach of the duty of good faith and fair dealing.  (Doc.

25    No. 78.)  Plaintiffs also move for partial summary judgment.  (Doc. No. 79.)  The motions

26    have been briefed and the court finds them suitable for submission without oral argument

27    in accordance with Civil Local Rule 7.1(d)(1).  For the below reasons, both motions are

28    **DENIED**.

                                          1

## I.      BACKGROUND

### A.      Factual Background[1]

Plaintiffs operated a real estate investment and development firm that created subsidiary entities to manage projects, assets, and liabilities.  One of Plaintiffs' investors, Kenneth Brehnan, loaned Plaintiffs' companies approximately $359,875 and received promissory notes in exchange.  On August 12, 2010, Brehnan e-mailed Plaintiffs a demand letter ("the Brehnan Demand") in which he provided "a reminder of Notes that are due." Brehnan  also warned, "I expect all of these Notes to be paid off at [the] beginning of September 2010" and "I would like to try not to proceed with legal remedy . . . . as being recommended by my legal team."  Brehnan demanded payment on contracts with the companies and did not allege or assert misconduct by Plaintiffs as directors and officers of those companies.

In May 2011, on behalf of both Plaintiffs, DeWald applied for a directors and officers liability insurance policy with Starr.[2]  The application inquired as to whether Plaintiffs had "any knowledge of any fact, circumstance or situation, or information . . . . or other matter that may give rise to a Claim which may fall within the scope of coverage of the proposed insurance,"[3] to which DeWald responded "no."  The application also informed Plaintiffs that there would be no coverage for any claim arising from matters about which they had knowledge or information that should have been disclosed. According to Starr, as part of the application, Plaintiffs submitted a "warranty letter" that

---

[1] The facts in this section are taken in large part from the Ninth Circuit's mandate in this case.  (Doc. No. 72.)  Citations to the Ninth Circuit's mandate herein will be to *Kelly v. Starr Indem. & Liab. Co.*, 769 F. App'x 439 (9th Cir. 2019).

[2] Plaintiffs state they already had directors and officers insurance in place with another company.  (Doc. No. 79-1 at 7, 9.)

[3] The application also asked if Plaintiffs had any knowledge of "any inquiry, investigation or communication that he/she/it has reason to believe might give rise to a Claim that might fall within the scope of coverage of the proposed insurance."

falsely "pumped up" the financial condition of Plaintiffs' company.   According to Plaintiffs: (1) the application did not define "claim" or "matter that may give rise to a Claim which may fall within the scope of coverage;" (2) when DeWald completed and signed the application, he did not have a copy of the policy that would be issued; and (3) Plaintiffs provided their company's balance sheet and income statement showing their company's assets and liabilities, which included Brehnan's loan.  Based on the application, Starr issued the policy effective May 11, 2011 to May 11, 2012.  The policy provided that Starr would pay for any "[l]oss arising from a Claim first made during the Policy Period . . . . against [Plaintiffs] for any Wrongful Act[.]"

In November 2011, Brehnan's attorney sent a more detailed demand letter to Plaintiffs warning that Brehnan may bring claims for breach of contract, breach of fiduciary duties, fraud, and securities fraud against Plaintiffs as individuals.  Plaintiffs contacted Starr to obtain defense.  Plaintiffs did not inform Starr at this point of the Brehnan Demand from August 2010.  Starr agreed to defend the claim subject to a reservation of rights while it investigated Brehnan's claims.  According to Starr, Starr reminded Plaintiffs of a provision in the policy requiring a $25,000 retention, and Plaintiffs' counsel stated they did not have it, which contradicted Plaintiffs' warranty letter.  According to Plaintiffs, Starr's agreement to defend them subject to a reservation of rights constituted an acknowledgment that Brehnan's demand contained several potential causes of action against them as individuals.

In April 2012, Brehnan provided Plaintiffs with a draft complaint.  According to Starr: (1) this was the point at which it first became aware of the Brehnan Demand, and the point at which it first became aware that Brehnan asserted that Plaintiffs breached the loan agreements before the inception date of the policy; (2) Brehnan's claims contained allegations of fraud, i.e. that Plaintiffs never intended to repay Brehnan for their loans; and (3) on May 3, 2012, Starr disclaimed coverage in a lengthy analysis letter to Plaintiffs.  According to Plaintiffs, after getting notice of Brehnan's draft complaint, Starr retained coverage counsel, who, without any investigation, reversed Starr's decision and denied

coverage based on the policy's prior knowledge exclusion as well as the policy's professional services exclusion.

In August 2012, Brehnan formally filed suit against Plaintiffs and their various companies. Plaintiffs settled with Brehnan for $350,000. According to Plaintiffs, after reviewing the filed complaint, Starr again failed to conduct an investigation. According to Starr, the settlement included only the amounts due on the loan to Brehnan, and did not include tort damages.

## B.    Procedural Background

In 2015, Plaintiffs filed suit against Starr, alleging breach of contract and breach of the duty of good faith and fair dealing.[4] In 2017, the parties filed opposing motions for summary judgment. (Doc. Nos. 47, 48.) Starr argued that Brehnan's claims were not covered because: (1) Plaintiffs failed to disclose the August 2010 Brehnan Demand to Starr on the application, and the policy precluded coverage for claims "arising out of any fact or circumstance" that the insureds knew about before May 2011; (2) under California law, this was a material misrepresentation that precluded coverage because Starr specifically inquired about prior claims and circumstances, and would not have issued the policy had it known about the Brehnan claim; (3) the policy had a prior knowledge exclusion as well as a professional services exclusion; (4) the Brehnan Demand occurred in 2010, which was prior to the May 2011 policy inception date, and the fact that the lawsuit was filed during the policy period does not change this result because under California law an initial demand and subsequent lawsuit are one claim; (5) under *August Entm't, Inc. v. Philadelphia Indem. Ins. Co.*, 146 Cal. App. 4th 565, 578 (2007), a claim arising out of an alleged breach of contract does not constitute a "wrongful act" as defined in an insurance policy; and (6) to

---

[4] Plaintiffs' Complaint also contains a third cause of action for negligence against "Doe agents/brokers." Doe defendants are not considered for federal pleading purposes. *Navarro Sav. & Loan Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980).

the extent Brehnan's claims were against Plaintiffs in there personal capacities, the policy only covered their actions as officers and directors.  (Doc. No. 47-1.)

Plaintiffs argued that Starr had a duty to defend them against Brehnan's claims because: (1) under California law, insurance policies must be construed in favor of coverage, and that any factual dispute concerning exclusions precludes the insurer's ability to deny coverage; (2) a factual dispute existed over whether Plaintiffs had knowledge or reasonably believed that the Brehnan Demand should have been disclosed on the application; (3) Brehnan's claims contained multiple "wrongful acts" that were not merely based in contract; (4) under Starr's reasoning, every demand for payment from any vendor or lender would need to be disclosed, but Plaintiffs nonetheless disclosed the Brehnan loan on their balance sheet submitted with the application; (5) the application never defined "claim;" and (6) the application never defined "professional services."  (Doc. No. 48.)

In 2017, this court granted summary judgment in favor of Starr, finding:

> Contrary to the representations in the Application that Plaintiffs were unaware of any fact or circumstance that might lead to a claim, the Brehnan 2010 demand provided Plaintiffs with notice of a claim, whether actual or potential, arising from the Promissory Notes that could give rise to liability. Furthermore, had Starr known of the risks associated with the Promissory Notes, it would not have issued the Policy.  Accordingly, claims arising out of or related to the Promissory Notes fall outside the policy's coverage scope.

(Doc. No. 59 at 8.)  This court also rejected Plaintiffs' arguments that (1) the Brehnan Demand was akin to the receipt of a bill, which is insufficient because "there must be a demand for money on account of some wrongful act," and (2) a claim is valid only if "a demand [is] made on the officer or director for money owed on account of a wrongful act."  (*Id.* at 8-9.)  This court also found that the language in the application regarding disclosure of claims was not ambiguous, and that the Brehnan Demand was a claim that was first made prior to the inception date of the policy.  (*Id.* at 11-12.)  In light of this court's determination that coverage did not extend to the Brehnan claims, this court found that Star had no duty to defend, and denied Plaintiffs' motion for partial summary judgment on that issue.  (*Id.* at 12.)

On appeal, the Ninth Circuit focused on the language of the policy, which required that claims be based on a "wrongful act," as opposed to the policy application, which did not contain the "wrongful act" language.  769 F. App'x at 441.  With respect to the district court's decision to grant Starr summary judgment, the Ninth Circuit held:

> The Policy provides indemnification for losses "arising from a Claim first made during the Policy Period . . . . against such Insured Person for any Wrongful Act . . . ."  The Policy defines a "wrongful act" as "any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement, or misleading statement by [Plaintiffs]."  Under this clear language, the district court erred in concluding that the Brehnan Demand constituted a claim made for a wrongful act.  Instead, Brehnan demanded money owed pursuant to contracts with Plaintiffs' companies, which at most establishes a question of fact whether the claim would be covered by the Policy.  Therefore, we reverse the district court's grant of summary judgment in favor of Starr.[5]

*Id.*  The court also held that "because it is unclear whether the Brehnan Demand constituted a claim that would be covered by the Policy, we cannot conclude that DeWald made a material misrepresentation when he failed to disclose it in the application despite being asked about circumstances that might lead to potential claims."  *Id.*  However, the Ninth Circuit upheld this court's denial of Plaintiffs' motion for partial summary judgment.  *Id.* at 441-42.

Starr subsequently filed a motion for reconsideration or clarification with the Ninth Circuit containing three arguments.  Appellants' Motion for Reconsideration, Case No. 17-56334 (9th Cir. May. 13, 2019), Doc. No. 36-1 ("Mot. for Recon.").  First, Starr argued the Ninth Circuit incorrectly found it could not conclude whether Plaintiffs made a material

---

[5] After several readings of the language "which *at most* establishes a question of fact," 769 F. App'x at 441 (emphasis added), in context, this court is of the view that perhaps the panel intended the word "least" rather than "most."  The language as rephrased would cleave to the relevant standard for a summary judgment opponent: merely identifying a genuine issue of material fact.  Nevertheless, this court will address the motions currently before it utilizing the language set forth by the panel.

misrepresentation on the application "because it is unclear whether the Brehnan Demand constituted a claim that would be covered by the Policy." Starr argued that the policy *application* did not inquire about "claims" per se, but rather information about facts, circumstances, situations or information *that might lead to potential claims*. *Id.* at 6. Second, Starr argued that under California law, the materiality of an omission on an insurance application is determined by the insurer, and Starr submitted a declaration stating that it would not have issued the policy had it known about the Brehnan Demand. Third, Starr argued that the Ninth Circuit's finding that there was a question of fact regarding whether the Brehnan Demand was a claim that would be covered by the policy supported upholding summary judgment in favor of Starr because if the Brehnan Demand is a covered claim, then it was made before the inception of the policy period. Alternatively, Starr argued that if the Brehnan Demand is not a covered claim, then the subsequent complaint filed by Brehnan is not covered because under *August Entertainment*, 146 Cal. App. 4th at 578, contract claims do not constitute "wrongful acts." The Ninth Circuit denied Starr's motion for reconsideration or clarification, and both parties subsequently filed the instant cross motions for summary judgment.

## II.    LEGAL STANDARDS

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . . the moving party is entitled to judgment as a matter  of law." Fed. R. Civ. P. 56(c); *Prison Legal News v. Lehman*, 397 F.3d 692, 698 (9th Cir. 2005). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party may not rely solely on conclusory allegations unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The court must examine the evidence in the light most favorable to the nonmoving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Any doubt as to the existence of any issue of material fact requires denial of the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where

cross motions for summary judgment are filed, the court must examine the entire record before ruling on either motion. *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1137 (9th Cir. 2001). Even in the absence of a factual dispute, a district court has the power to "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

In its mandate to this court denying summary judgment for both parties, the Ninth Circuit stated, "[w]e . . . . find no reason to enter either full or partial judgment for either party." 769 F. App'x at 442. Notwithstanding this holding, both parties argue, for the second time,[6] that they are entitled to summary judgment. In fact, not only do both parties argue that they are entitled to summary judgment *in spite* of the Ninth Circuit's mandate, they argue they are entitled to summary judgment *because of* the Ninth Circuit's mandate. As discussed below, these arguments are unavailing because they are based on strained interpretations of the Ninth Circuit's directive.

### A.   Starr's Motion for Summary Judgment

Starr's primary argument is a multi-part one. Starr argues: (1) "[t]he Ninth Circuit concluded the Brehnan Demand was not a covered claim under the Starr Policy because it was founded in contract;" (2) the court therefore "implicitly" held "that the Brehnan Action is a claim to recover a business debt under contract and does not constitute a claim for a 'wrongful act' under the Starr Policy;" (3) under *August Entertainment*, 146 Cal. App. 4th at 578, "an insured's alleged or actual refusal to make payment under a contract does not

---

[6] After the remand by the Ninth Circuit, the magistrate judge provided the parties with an opportunity to file "any dispositive motions they believe can still be brought." (Doc. No. 77.) "[D]istrict courts have discretion to entertain successive motions for summary judgment[.]" *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010).

give rise to a loss caused by a wrongful act;"[7] and (4) Brehnan's claims against Plaintiffs are therefore not covered under the policy as a matter of law even if Plaintiffs' failure to disclose the Brehnan Demand does not justify granting summary judgment to Starr.[8]  (Doc. No. 78-1 at 6-7.)

Although the Ninth Circuit found that "Brehnan demanded money owed pursuant to contracts with Plaintiffs' companies," 769 F. App'x at 441, it did not conclude, as a matter of law, that the Brehnan Demand was *not* a covered claim under the Starr Policy because it was founded in contract, or for any other reason.  Rather, the Ninth Circuit merely found that the district court erred in finding that Starr *was entitled to summary judgment* on the issue of whether "the Brehnan Demand constituted a claim made for a wrongful act."  *Id.* Moreover, the court explicitly recognized, albeit with some skepticism, that the Brehnan Demand "at most establishes a question of fact whether the claim would be covered by the Policy," and that "it is unclear whether the Brehnan Demand constituted a claim that would be covered by the Policy[.]"  *Id.*  (Please see this court's footnote 5.)  Starr concedes in its motion that "the Ninth Circuit concluded that there was a question of fact regarding

---

[7] *See also Catlin Specialty Ins. Co. v. CAMICO Mut. Ins. Co.*, 896 F. Supp. 2d 808, 815 (N.D. Cal. 2012)  ("[T]here is case law holding that, where a party is contractually obligated to pay a debt, that debt is . . . . not 'a loss resulting from a wrongful act[.]'")  (citations omitted).

[8] Instead of directly addressing Starr's arguments in its motion, Plaintiffs argue that consideration of Starr's motion is a "waste of time" because the arguments contained therein conflict with the Ninth Circuit's mandate.  (Doc. No. 81 at 15.)  This argument is unhelpful because, as discussed herein, Plaintiffs filed their own motion for summary judgment that is based on their own strained interpretations of the Ninth Circuit's mandate. Additionally, Plaintiffs argue that Starr's motion should be denied because "Starr's entire motion in all respects is based on the now improper argument that the Brehnan Demand on the LLC's in 2010 was a demand on Plaintiffs."  (*Id.* at 14.)  As pointed out by Plaintiffs, the Ninth Circuit specifically recognized that "Brehnan demanded payment on contracts with the companies and did not allege or assert misconduct by Plaintiffs as directors and officers of those companies," but nonetheless upheld the denial of Plaintiffs' motion for summary judgment.  *See* 769 F. App'x at 441-42.

whether the Brehnan Demand was a 'claim' under the Policy because it was unclear whether that demand would have been covered under the Policy." (Doc. No. 78-1 at 13.) This question, i.e. whether the Brehnan Demand and subsequent claims were covered under the policy, is clearly genuine and material because it is the central issue in the case.  In sum, the Ninth Circuit's finding that the district court erred in finding, as a matter of law, that the Brehnan Demand was a claim made for a wrongful act because it was a demand for money owed pursuant to contracts, is not a finding that the Brehnan Demand *is or is not* covered by the policy, but rather a finding that the issue cannot be resolved on summary judgment.  Accordingly, Starr's argument fails because it relies on an overly strained interpretation of the Ninth Circuit's decision.

For several reasons, however, Starr's argument is not without some resonance.  Starr is correct that under *August Entertainment*, 146 Cal. App. 4th at 578, the California Court of Appeal held that "an insured's alleged or actual refusal to make payment under a contract does not give rise to a loss caused by a wrongful act."  Starr is also correct that the Ninth Circuit's holding that "Brehnan demanded money owed pursuant to contracts with Plaintiffs' companies," 769 F. App'x at 441, is an "implication . . . . that the Brehnan Demand involved a business debt rather than a wrongful act within the meaning of the Starr Policy," (Doc. No. 78-1 at 13).  Furthermore, the Ninth Circuit did not address *August Entertainment* in its mandates denying summary judgment and denying reconsideration or clarification.  Finally, the Ninth Circuit's statements that the Brehnan Demand "*at most* establishes a question of fact whether the claim would be covered by the Policy" and that "it is *unclear* whether the Brehnan Demand constituted a claim that would be covered by the Policy," 769 F. App'x at 441 (emphasis added), are not, in and of themselves, definitive holdings that there *is* a genuine dispute of material fact as to whether the Brehnan Demand or Brehnan's claims are covered by the policy.

However, the Ninth Circuit's omission of *August Entertainment* in its mandates, and its less-than-definitive language regarding whether a genuine dispute of material fact is presented by the Brehnan Demand, cannot reasonably be interpreted as a directive to this

10

court to revisit the Ninth Circuit's holding that, on the present the record, there is "no reason to enter either full or partial judgment for either party." *Id.* at 442. First, Starr already made its argument regarding *August Entertainment* in its first motion for summary judgment that was appealed to the Ninth Circuit, as well as in its motion for reconsideration or clarification before the Ninth Circuit, which was denied. *See* Mot. for Recon. at 16-17. Additionally, when considered in its entirety, the Ninth Circuit's mandate is a general rejection of granting summary judgment in favor of Starr because the court also found that: (1) none of Starr's theories in support of upholding summary judgment in its favor were "dispositive as a matter of law based on the current record;" (2) the court could not conclude whether a material misrepresentation was made on the application; (3) the record did not establish whether Plaintiffs created fake companies to hide money from investors or misrepresented their companies' financial affairs to influence additional investments; and (4) Plaintiffs were not entitled to summary judgment because Starr could potentially establish an entitlement to equitable reformation of the contract in its favor. 769 F. App'x at 441-42. Finally, in reaching its decision, the Ninth Circuit stated that it must affirm any correct decision of the district court on any ground contained in the record, even if the district court relied on the wrong grounds or reasoning. *Id.* at 441 (citing *Jackson v. S. Cal. Gas. Co.*, 881 F.2d 638, 643 (9th Cir. 1989). Therefore, the Ninth Circuit's mandate clearly indicates that if an alternative ground in the record existed for granting summary judgment in favor of Starr (such as the holding in *August Entertainment*), it would have affirmed the district court's decision. Plaintiffs concede, and Starr does not dispute, that the evidentiary record is no different now than it was before the Ninth Circuit. Accordingly, the Ninth Circuit's findings that "the district court erred in concluding that the Brehnan Demand constituted a claim made for a wrongful act" and "[i]nstead, Brehnan demanded money owed pursuant to contracts with Plaintiffs' companies," do not warrant granting summary judgment in favor of Starr given that the court also found "no reason to enter either full or partial judgment for either party." *Id.* at 441-42.

### 1.   Professional Services Exclusion

Starr also argues that it is entitled to summary judgment because the policy excludes any loss in connection with any claim "alleging, arising out of, based upon or attributable to the rendering or failure to render any professional service to a customer or client of the insured." (Doc. No. 78-1 at 14.)   Starr previously made the same argument before this court, (*see* Doc. No. 47-1 at 16-17), as well as before the Ninth Circuit, *see* 2018 WL 1391681, *30-31.   The Ninth Circuit clearly rejected Starr's argument that "multiple exclusions bar coverage," and held that Starr "fail[ed] to show that any one of these theories is dispositive as a matter of law based on the current record."  769 F. App'x at 441.   There is no reason that Starr's argument regarding the professional services exception clause was exempted from the Ninth Circuit's ruling, and the record has not changed.   Accordingly, the professional services exclusion clause is not a basis for granting summary judgment in favor of Starr.

### 2.   Bad Faith

Because it claims there was no breach of its duty to defend, Starr also argues that it is entitled to summary judgment on Plaintiffs' cause of action for breach of the implied covenant of good faith and fair dealing. (Doc. No. 78-1 at 16.)  This is the same reasoning upon which this court previously relied in granting summary judgment to Starr. (Doc. No. 59 at 12 n.7.)  The Ninth Circuit's reversal of that decision makes clear that, based on the record, Starr is not entitled to summary judgment on the issue of whether Starr had a duty to defend.  Thus, the basis for Starr's argument against Plaintiffs' bad faith claim no longer exists.  Additionally, as stated by Starr, the elements of a cause of action for breach of the implied covenant of good faith and fair dealing are (1) the withholding of benefits which are due under the policy, and (2) the withholding of such benefits unreasonably or without proper cause. (Doc. No. 47-1 at 19 (citing *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (Ct. App. 1990)).)  Although Starr argues that it acted reasonably in investigating the Plaintiffs' claim for a defense, (Doc. No. 78-1 at 17), based on the Ninth Circuit's mandate,

whether benefits were due under the policy is not a question to be decided in favor of Starr on summary judgment.[9]

### 3.     Punitive Damages

Finally, Starr repeats its argument that it previously made to this court that it is entitled to summary judgment on Plaintiffs' claim for punitive damages.  (Doc. Nos. 47-1 at 21, 78-1 at 18-19.)  Because this court previously granted summary judgment in favor of Starr on other grounds, it did not reach this argument in its previous order.  The parties do not dispute that in order to be entitled to punitive damages, Plaintiffs must prove by clear and convincing evidence that Starr is guilty of oppression, fraud, or malice.  *See* CAL. CIV. CODE § 3294(a); *Basich v. Allstate Ins. Co.*, 87 Cal. App. 4th 1112, 1121 (Ct. App. 2001).  Starr argues that under *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1288 (Ct. App. 1994), its conduct must rise to the level that it "could be described as evil, criminal, recklessly indifferent to the rights of the insured, or [having] a vexatious intention to injure."  Starr also argues that under *Patrick v. Maryland Cas. Co.*, 217 Cal. App. 3d 1566, 1567-68 (Ct. App. 1990), punitive damages cannot be awarded even where "the insurer's claims handling practices were shoddy, and its handling of the claim sought by the insured was at times witless and infected with symptoms of bureaucratic inertia and inefficiency."  Starr argues that neither the record nor the Ninth Circuit's mandate suggests Starr misrepresented coverage or misled Plaintiffs, was recklessly indifferent to the rights of its insureds, or possessed an intent to injure.  (Doc. No. 78-1 at 18.)

Plaintiffs allege that Starr is guilty of malice, oppression, and/or fraud because (1) Starr did not properly investigate their claim for a defense, and instead conducted a one-sided evaluation in order to deny the claim, and (2) Starr refused to provide even a

---

[9] Because there is a genuine dispute concerning the extent of Starr's investigation, the court also declines to grant summary judgment in favor of Starr on Plaintiffs' bad faith claims based on Starr's argument regarding the genuine dispute doctrine.  (*See* Doc. No. 78-1 at 16-17.)  Additionally, this same argument was before the Ninth Circuit, (*see* Doc. No. 47-1 at 19-20), which declined to uphold even partial summary judgment for Starr.

conditional defense once it became clear that a duty to defend was owed.  (Doc. No. 1-2 at 20-21 ¶ 61.)   In opposing Starr's motion, Plaintiffs emphasize that Starr maintains the burden of production and persuasion that no genuine dispute of material fact exists as to this issue, and argue that a jury could find malice, fraud, and oppression because: (1) at trial, Starr will not be able to explain why a defense was not provided; (2) Starr misstated the law and the allegations in Brehnan's complaint to support its denial; and (3) when it received Brehnan's draft complaint, Starr did no further investigation and instead hired coverage counsel who was not hired to investigate, adjust, or fairly evaluate the claims. (Doc. No. 81 at 29-30.)

On the one hand, Plaintiffs' allegations essentially argue that because Starr allegedly breached its contract, it is guilty per se of oppression, fraud, or malice.  Plaintiffs also fail to cite a single case in which a court found that similar conduct by an insurer demonstrated oppression, fraud, or malice.  On the other hand, Starr's conclusory argument that "there is no evidence that Starr misrepresented coverage or misled [Plaintiffs], that Starr was recklessly indifferent to the rights of its insureds or that Starr possessed any intent to injure" is similarly unpersuasive because it is made in summary fashion without any citations to any supporting caselaw.  Because it is Starr that bears the burden of production and persuasion, and because it failed to do so, Starr is not entitled to summary judgment on Plaintiffs' claim for punitive damages.

## B.   Plaintiffs' Motion for Partial Summary Judgment

As with Starr's summary judgment motion, Plaintiffs' summary judgment motion is also a strained multi-faceted interpretation of the Ninth Circuit's mandates.  Plaintiffs argue (1) because the Ninth Circuit expressly found the Brehnan Demand was not a claim made for a wrongful act, the appellate court impliedly found that Plaintiffs did nothing wrong by failing to disclose it on their application,[10] and (2) because Plaintiffs' failure to disclose the

_____

[10] Plaintiffs state that the Ninth Circuit "found that the claims made for repayment of loans made to Plaintiffs' companies by . . . . Brehnan were not claims under the Policy, thus

Brehnan Demand was the only basis for Starr's claim that Plaintiffs misled Starr or concealed information, Starr has no equitable defenses because equitable defenses require fraud.[11]  (Doc. No. 79-1 at 5-6.)  Plaintiffs' argument fails because the Ninth Circuit did not absolve them of any fault for failing to disclose the Brehnan Demand on their application.[12]  Plaintiffs are correct that the Ninth Circuit stated that it "[could not] conclude that DeWald made a material misrepresentation when he failed to disclose it in the application despite being asked about circumstances that might lead to potential claims."  769 F. App'x at 441.  When read in context, however, this statement does not absolve Plaintiffs of liability for failing to disclose the Brehnan Demand on their application, and more importantly, it does not entitle Plaintiffs to summary judgment on the issue.  Rather, the statement is part of the Ninth Circuit's holding that (1) *Starr was not entitled to summary judgment* because the district court erred, in effect, by finding, *as a matter of law*, that the Brehnan Demand *was* a claim made for a wrongful act, and

———————————

rejecting the argument that Plaintiffs were required to provide notice to Starr of those claims prior to the purchase of the subject Policy[.]"  (Doc. No. 79-1 at 5.)

[11] Plaintiffs state that their failure to disclose the Brehnan demand "was the only basis to support any finding that Plaintiffs misled or concealed information required to be disclosed," and there is "no other evidence that would conceivably support some affirmative equitable defense."  (Doc. No. 79-1 at 6; *see also id.* ("Starr has no basis to suggest that Plaintiffs had any reason to tell Starr that Brehnan had made this demand nor was there any basis to now support a claim of fraud by Plaintiffs against Starr.").)

[12] Plaintiffs repeatedly claim the Ninth Circuit's mandate completely absolved them of any fault for failing to disclose the Brehnan demand on their insurance application.  (*See* Doc. 79-1 at 6 ("[T]he Ninth Circuit's opinion clearly finds that the Brehnan pre-policy demand for payment on notes owed by Plaintiffs' companies were not 'claims' requiring reporting to Starr. . . . It is now the law of the case that the claims of Brehnan made for payment of the loans . . . . do not constitute information requested in the application."), 9 ("As a result of the Ninth Circuit's decision there is now clearly not a single misrepresentation of any kind alleged to have been made in the application."); Doc. No. 92 at 2 ("[The Ninth Circuit's] decision held that Brehnan's 2010 claim against the LLC's was not relevant to the application process and did not require disclosure at the time of the application.").)

(2) coverage was still a triable question of fact.  *Id.*  The Ninth Circuit held that Starr failed to show, among other things, that Starr's "theory" that Plaintiffs made a misrepresentation on their application "is dispositive as a matter of law based on the current record."  *Id.*  The Ninth Circuit's finding that it could not conclude that Plaintiffs made a material misrepresentation on their application is not a finding, as Plaintiffs argue, that Plaintiffs *did not*, *as a matter of law,* make a material misrepresentation on their application. Certainly, if the Brehnan Demand was not a claim for a wrongful act, then Plaintiffs may still have had an obligation to disclose it in order for Starr to investigate Plaintiffs' potential liabilities.  But the Ninth Circuit did not hold that the Brehnan Demand is *not* a claim made for a wrongful act.  Again, the Ninth Circuit merely held that the district court erred in finding that Brehnan's demand for "money owed pursuant to contracts with Plaintiffs' companies" was, *as a matter of law*, a claim made for a wrongful act that was covered under the policy.  *Id.*

Overall, Plaintiffs' argument that they are entitled to summary judgment fails for the reasons stated above.  In sum, the Ninth Circuit acknowledged that the Brehnan Demand "establishes a question of fact whether the claim would be covered by the Policy" and "it is unclear whether the Brehnan Demand constituted a claim that would be covered by the Policy."[13]  This is not an invitation to this court to second-guess the Ninth Circuit's conclusion that neither party is entitled to summary judgment.  Further, the Ninth Circuit did not find, as a matter of law, that Plaintiffs made no misrepresentations on their application, and there is no basis for this court to conclude that Starr cannot prevail on an equitable defense at trial.  To the contrary, the Ninth Circuit specifically held that Plaintiffs were not entitled to summary judgment because "[i]f Starr obtains evidence of nonexistent

---

[13] The court also acknowledged that Brehnan's allegations that Plaintiffs "created fake companies to hide money from investors and that they repeatedly misrepresented their companies' financial affairs to influence additional investments . . . . would form a stronger basis for a finding of material misrepresentation[.]"  *Id.*

companies or material misrepresentations that predate the Policy, then Starr could potentially establish an entitlement to equitable reformation of the contract to exclude any claim made by Brehnan." *Id.* at 441-42.  These questions will be addressed at trial.

It is unreasonable that the Ninth Circuit intended that its decision to uphold the denial of summary judgment to Plaintiffs would later be used by this court to reach the opposite outcome.  Accordingly, as Starr is not entitled to summary judgment, neither are Plaintiffs.

### 1.    Policy Exclusion Defenses

Plaintiffs also argue that the Ninth Circuit held that Starr could not rely on any other policy exclusion to deny a defense.  (Doc. No. 79-1 at 5.)  Specifically, Plaintiffs argue that by rejecting the "application of other Policy exclusions Starr asserted as a basis for its refusal to defend[,]  .  .  .  the Ninth Circuit rejected any suggestion that Starr had demonstrated the applicability of any other coverage defense[.]"  (*Id.*; *see also id.* at 17 ("[T]he only basis for Starr to defeat Plaintiffs' claim for breach of contract for admittedly failing to defend will be based on some form of equity defense[.]"); Doc. No. 92 at 2 ("[The appellate court's] decision explicitly held that Starr can now only assert an equitable reformation theory to argue that the policy should be reformed to exclude the Brehnan action and only on showing of fraud or misrepresentation.").)

With respect to Starr's argument that "multiple exclusions bar coverage," the Ninth Circuit found that Starr "fail[ed] to show that any one of these theories is dispositive as a matter of law based on the current record."  769 F. App'x at 441.  This argument was made, however, by Starr to the Ninth Circuit in support of upholding summary judgment in Starr's favor.  The Ninth Circuit's rejection of these arguments is therefore not, as Plaintiffs suggest, a finding that Starr is prohibited, as a matter of law, from making these arguments at trial.  The Ninth Circuit did not mandate that Plaintiffs were entitled to summary judgment based on the lack of any particular defense available to Starr.  The Ninth Circuit merely held that Starr's arguments with respect to the exclusions contained in the policy were insufficient to uphold the district court's finding of summary judgment in favor of

Starr, not that "coverage defenses" or any other defenses would be unavailable for Starr at trial.

### 2.   Equitable Defenses

Plaintiffs also argue "there is no basis in fact and no substantive evidence of any kind that would provide Starr any form of equitable defense." (Doc. No. 79-1 at 5-6; *see also id.* at 15 ("Plaintiffs seek summary adjudication of Defendant Starr's Affirmative Defenses Nos. 20 and 24, to the extent those defenses seek equitable reformation of the insurance contract.").)  As discussed above, this argument is unavailing because it relies on the false premise that the Ninth Circuit found, as a matter of law, that Plaintiffs made no misrepresentations on their application.  Moreover, it appears to be in direct conflict with the Ninth Circuit's finding that "[i]f Starr obtains evidence of nonexistent companies or material misrepresentations that predate the Policy, then Starr could potentially establish an entitlement to equitable reformation of the contract to exclude any claim made by Brehnan."  769 F. App'x at 442.  Although the Ninth Circuit found that the potential for equitable reformation was conditional on Starr "obtain[ing] evidence," this language is not an invitation for this court to review whether Starr has obtained that evidence, and if not, grant summary judgment to Plaintiffs.  Without some change to the evidentiary record, to do so would be in conflict with the Ninth Circuit's holding that "Plaintiffs have failed to establish that they are entitled to a ruling on the duty to defend." *Id.* at 441-42.  As the Ninth Circuit clearly acknowledged, if the district court's decision to deny Plaintiffs summary judgment was correct, the Ninth Circuit must affirm, even if the district court applied the wrong reasoning. *Id.* at 441 (citing *Jackson*, 881 F.2d at 643).  Furthermore, Plaintiffs concede that according to the Ninth Circuit's mandate (1) "Starr's purported equitable defense associated with some alleged fraud on Starr could still theoretically defeat Plaintiffs' assertion that there was a duty to defend," (Doc. No. 79-1 at 5), and (2) "Plaintiffs were not entitled to a ruling on Starr's duty to defend, specifically, because it is possible Starr could prove fraud or misrepresentation by Plaintiffs against Starr," (*id.*

at 14).  Accordingly, Plaintiffs are not entitled to summary judgment in spite of, or because of, the Ninth Circuit's decision affirming the denial of summary judgment in their favor.

### 3.    Statute of Limitations

Finally, Plaintiffs argue that Starr's equitable reformation defense is unavailable because it is subject to the three-year statute of limitations applicable to claims of fraud or mistake.  (Doc. No. 79-1 at 19-20 (citing CAL. CODE CIV. PROC. § 338(d)).)  Plaintiffs allege that Starr first denied Plaintiffs' claim for a defense on May 3, 2012, and that Starr did not assert the equitable defense until after December 2, 2015 when it filed its Answer.  (*Id.* at 20.)  Plaintiffs cite no authority supporting their argument that the three-year statute of limitations under section 338(d) of the California Code of Civil Procedure applies to equitable defenses.  Plaintiffs also failed to raise this argument in their first motion for summary judgment.  Accordingly, Plaintiffs are not entitled to summary judgment on this ground.

### C.    Genuine Dispute of Material Fact

Genuine disputes of material fact exist on: (1) whether the Brehnan demand should have been disclosed on the application given that Brehnan threatened litigation; (2) whether documentation was provided with the application that "pumped up" the financial condition of Plaintiffs' company and/or disclosed the Brehnan loan; (3) application of the "wrongful act" language in the policy to the circumstances of the case; (4) the extent to which Starr investigated Plaintiffs' claim for a defense; and (5) whether Plaintiffs made any misrepresentations to Brehnan.  Additionally, even in the absence of factual disputes, given the Ninth Circuit's initial mandate and the parties' dramatically different interpretation thereof, the better course of action for this case, which has been litigated since 2015, is to resolve it at trial.  *See Anderson*, 477 U.S. at 255 ("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.").

## IV.   CONCLUSION

For the forgoing reasons, Plaintiffs' and Defendant's cross motions for summary judgment are **DENIED**.

IT IS SO ORDERED.

DATED: May 29, 2020

JEFFREY T. MILLER
United States District Judge

15cv2900 JM (RBB)